COLE SCHOTZ P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
David R. Hurst
Daniel F.X. Geoghan

*Counsel to the SunEdison Litigation Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SUNEDISON, INC., *et al.,* | Case No. 16-10992 (SMB) |
| Reorganized Debtors.[1] | (Jointly Administered) |
| SUNEDISON LITIGATION TRUST, | |
| Plaintiff, | Adv. Pro. No. 18-01391 (SMB) |
| – against – | |
| DASHIELL CORPORATION, | |
| Defendant. | |

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE Minnesota Holdings, LLC (8926); SunE MN Development Holdings, LLC (5388); and SunE MN Development, LLC (8669). The address of the Reorganized Debtors' corporate headquarters is Two CityPlace Drive, 2nd floor, St. Louis, MO 63141.

**FIRST AMENDED COMPLAINT TO: (I) AVOID AND RECOVER
TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550;
AND (II) DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502(d)**

The SunEdison Litigation Trust, the plaintiff herein (the "**Plaintiff**"), alleges that:

## NATURE OF THE CASE

1.     Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the Preference Transfers[2] were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the Petition Date.  Subject to proof, Plaintiff also seeks to recover all fraudulent conveyances made to Defendant on or after September 1, 2015, pursuant to section 548 of the Bankruptcy Code.  To the extent that Defendant filed a proof of claim or has a claim listed on the Debtors' schedules as undisputed, liquidated and not contingent, or otherwise requested payment from the Debtors or the Debtors' chapter 11 estates, this complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason, including pursuant to section 502 of the Bankruptcy Code, and such rights are expressly reserved.  Notwithstanding this reservation of rights, certain relief pursuant to section 502 of the Bankruptcy Code is sought by Plaintiff herein as further stated below.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3.     This adversary proceeding is brought pursuant to Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure and sections 502(d), 547, 548 and 550 of title 11 of United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**").  Plaintiff consents to the entry of final orders or judgements by the Court if it is determined that the Court, absent consent

---

[2]     Unless otherwise stated, Capitalized terms used herein are defined elsewhere in this complaint.

of the parties, cannot enter final orders or judgements consistent with Article III of the United States Constitution.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with a case under the Bankruptcy Code which is pending in this District.

5. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), (F), (H) and (O).

## BACKGROUND

**A.    The Parties**

6. Beginning on April 21, 2016 (the "**Petition Date**"), the above-captioned reorganized debtors (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

7. On March 28, 2017, the Debtors filed their Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates [Docket No. 2671] (as amended from time to time, the "**Plan**").

8. On July 28, 2017, the Court entered the Findings of Facts, Conclusions of Law and Order Confirming Second Amended Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates [Docket No. 3735] (the "**Confirmation Order**"), thereby approving the Plan and the GUC/Litigation Trust Agreement (the "**Litigation Trust Agreement**").

9. On December 29, 2017, the Plan became effective [Docket No. 4495] (the "**Effective Date**").

10. Pursuant to the Plan, on the Effective Date, all of the Debtors' rights, title and interests in the GUC/Litigation Trust Causes of Action (as defined in the Plan), were transferred to Plaintiff.

11. Pursuant to the Plan, Plaintiff was authorized, as the representative of the Debtors' estates, to pursue the GUC/Litigation Trust Causes of Action, including the causes of action asserted herein.

12. Upon information and belief, Dashiell Corporation ("**Defendant**") was a creditor of the Debtors prior to the Petition Date.

13. Plaintiff retains the right to enforce, sue on, settle or compromise all causes of action belonging to Plaintiff, including claims under sections 502(d), 547, 548 and 550 of the Bankruptcy Code.

**B.     Events Leading to the Debtors' Financial Collapse**

14. Beginning in May 2015, the Debtors announced a series of planned acquisitions (the "**Planned Acquisitions**") that gave rise to billions of dollars of funding commitments, which were layered on top of the nearly $10 billion in debt that SunEdison, Inc. ("**SunEdison**") was carrying at the end of the second quarter of 2015. In particular, in May 2015, the Debtors announced an acquisition of South American renewable energy firm Latin America Power for approximately $700 million (the "**LAP Acquisition**"). Then, in July 2015, the Debtors announced an agreement to purchase twelve hydroelectric and wind projects in Brazil for approximately $4 billion from Renova Energia, S.A. ("**Renova**"), and to purchase $250 million in securities of Renova from a third party. Finally, also in July 2015, the Debtors announced an agreement to purchase residential rooftop solar power provider Vivant Solar for $2.2 billion. None of these transactions ultimately was consummated.

4

15. Investors reacted negatively to the Debtors' acquisition plans—and the proposed Vivant transaction in particular. Indeed, between July 15, 2015 and August 31, 2015, SunEdison's stock value dropped 70%, while the stock values of companies in its peer group dropped just 10% to 15%. Thus, the drop in SunEdison's stock price was not attributable merely to market conditions, but rather was due to the Debtors' financial performance and capital structure.

16. The market also punished the share price of SunEdison's "yieldco" subsidiary Terraform Power, Inc. ("**TERP**"), which in turn led to further deterioration in the Debtors' liquidity position. In particular, in late July or early August 2015, additional funding requirements arose in connection with margin call requirements on a $400 million loan agreement tied to the value of TERP shares, which had decreased in value by approximately 25% in July 2015. In response to these margin calls, the Debtors were required to deposit $152 million into an escrow account as collateral during the third quarter of 2015, and deposit an additional $91 million in October 2015.

17. In early August 2015, just weeks after announcing the Vivant transaction, the Debtors sought to raise $300 million in much-needed capital through an initial public offering (IPO) of shares of Terraform Global, Inc. ("**Global**"). However, the IPO failed and the Debtors were forced to contribute $30 million to fund the IPO short-fall. Moreover, the IPO saddled the Debtors with ongoing post-IPO financial and operational support obligations. The failed IPO furthered the rapid deterioration in the Debtors' market capitalization and, as of late August 2015, several of SunEdison's debt issuances were trading substantially below par (65-75%).

5

18. SunEdison's liquidity decreased during the third quarter of 2015 by approximately $200 million. Specifically, SunEdison's "free" cash (excluding TERP and Global) declined from $461 million (as of June 30, 2015) to $308 million (as of September 30, 2015), and its availability under its first lien credit facility declined from $84 million (as of June 30, 2015) to $34 million (as of September 30, 2015). The situation had become critical, as SunEdison's remaining cash was barely sufficient to cover its quarterly cash "burn" of $250-300 million required to fund certain project development costs (pre-construction) and corporate overhead expenses. There was no cash left to fulfill other obligations, including those arising in connection with the Planned Acquisitions. For instance, after SunEdison failed to make a $355 million upfront cash payment in September in connection with the LAP Acquisition, the deal fell apart and Latin America Power shareholders sued SunEdison for its failure to close the transaction.

19. In short, by September 1, 2015—and indeed well before that—SunEdison and its affiliated Debtors were insolvent and/or were no longer able to pay their debts as they came due, and had entered into transactions (*i.e.*, the Planned Acquisitions) that they had no ability to consummate. During their chapter 11 cases, the Debtors sold all of their assets for less than $2 billion, demonstrating just how severe the Debtors' financial crisis had become before they finally collapsed into chapter 11.

20. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers of an interest of the Debtors in property made to Defendant that may be recoverable under sections 547 or 548 of the Bankruptcy Code, including any transfers of an interest of the Debtors in property made to Defendant during the ninety (90) days preceding the Petition Date. It is Plaintiff's intention to avoid and recover all such transfers

6

made by the Debtors. Plaintiff reserves the right to amend this original complaint to include: (i) further information regarding the Transfer(s); (ii) additional transfers; (iii) modifications of and/or revision to Defendant's name; (iv) additional defendants; and /or (v) additional causes of action (collectively, the "**Amendments**"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original complaint.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(Avoidance and Recovery of Preferential Transfers)

21. Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

22. On or within the ninety (90) days preceding the Petition Date, the Debtors, as more particularly set forth on Exhibit A attached hereto, made, or caused to be made, one or more transfers to or for the benefit of Defendant, which transfers are listed on Exhibit A attached hereto and incorporated herein by reference (the "**Preference Transfers**").

23. The Preference Transfers were of a property interest of the Debtors as identified in Exhibit A.

24. During the ninety days (90) preceding the Petition Date, Defendant was a creditor at the time of each Preference Transfer by virtue of supplying goods and/or services for which the identified Debtors were obligated to pay following delivery.

25. The Debtors made, or caused to be made, the Preference Transfers for, or on account of, antecedent debt(s) owed by the Debtors before such Preference Transfers were made.

26. The Preference Transfers were made while the Debtors were insolvent.

7

27. The Preference Transfers enabled Defendant to receive more than Defendant would receive if: (a) the Debtors' bankruptcy cases were administered under chapter 7 of the Bankruptcy Code; (b) the Preference Transfers had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

28. Interest on the Preference Transfers has accrued and continues to accrue from the date each of the Preference Transfers was made.

29. Defendant was the initial transferee of the Preference Transfers, or the entity for whose benefit the Preference Transfers were made, or was the immediate or mediate transferee of the initial transferee receiving the Preference Transfers.

30. The Preference Transfers, to the extent they are avoided pursuant to section 547(b) of the Bankruptcy Code, may be recovered by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

### SECOND CAUSE OF ACTION
### (Avoidance and Recovery of 90-Day Fraudulent Transfers)

31. Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

32. Plaintiff pleads in the alternative that to the extent one or more of the transfers as identified on <u>Exhibit A</u> were not on account of antecedent debt (such transfers, the "**90-Day Fraudulent Transfers**"), the Debtors did not receive reasonably equivalent value in exchange for such 90-Day Fraudulent Transfers; and

    a. The Debtors were insolvent on the dates that the 90-Day Fraudulent Transfers were made or became insolvent as a result of the 90-Day Fraudulent Transfers; or

  b.  The Debtors engaged in business or a transaction, or were about to engage in business or a transition, for which any property remaining with the Debtors who made or for whose benefit the 90-Day Fraudulent Transfers were made was an unreasonably small capital; or

  c.  The Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

33.  The 90-Day Fraudulent Transfers were made to or for the benefit of Defendant within the one year prior to the Petition Date.

34.  The 90-Day Fraudulent Transfers, to the extent they are avoided pursuant to section 548 of the Bankruptcy Code, may be recovered by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

### THIRD CAUSE OF ACTION
**(Avoidance and Recovery of Additional Fraudulent Transfers)**

35.  Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

36.  The transfers identified on Exhibit B were not on account of antecedent debt owed by the Debtor entity that made such transfers (such transfers, the "**Additional Fraudulent Transfers**" and, collectively with the Preference Transfers and the 90-Day Fraudulent Transfers, the "**Transfers**") and the Debtor that made such Additional Fraudulent Transfers did not receive reasonably equivalent value in exchange for such Additional Fraudulent Transfer(s); and

9

  a.  The Debtors were insolvent on the date that the Additional Fraudulent Transfers were made or became insolvent as a result of the Additional Fraudulent Transfers; or

  b.  The Debtors engaged in business or a transaction, or were about to engage in business or a transition, for which any property remaining with the Debtors who made or for whose benefit the Additional Fraudulent Transfers were made was an unreasonably small capital; or

  c.  The Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

37. The Additional Fraudulent Transfers were made to or for the benefit of Defendant within the one year prior to the Petition Date.

38. The Additional Fraudulent Transfers, to the extent they are avoided pursuant to section 548 of the Bankruptcy Code, may be recovered by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

### FOURTH CAUSE OF ACTION
### (Disallowance of Claims)

39. Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

40. Defendant is the recipient of the Transfers, which are recoverable pursuant to sections 547, 548 and 550 of the Bankruptcy Code, and Defendant has not returned the Transfers to Plaintiff.

41. Based upon the foregoing and pursuant to section 502(d) of the Bankruptcy Code, the claims, if any, asserted by Defendant against the Debtors (collectively, the

10

"**Claims**") must be disallowed since Defendant has not paid or surrendered the Transfers to Plaintiff.

WHEREFORE, Plaintiff prays that the Court enter a judgment against Defendant:

a.  On Plaintiff's First Cause of Action, in favor of Plaintiff and against Defendant in an amount not less than the amount of the Preference Transfers, plus interest from the date of such Preference Transfers until full payment is made to Plaintiff, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and directing Defendant to turnover such sum to Plaintiff pursuant to sections 547(b) and 550(a) of the Bankruptcy Code;

b.  On Plaintiff's Second Cause of Action, in favor of Plaintiff and against Defendant in an amount not less than the amount of the 90-Day Fraudulent Transfers, plus interest from the date of such 90-Day Fraudulent Transfers until full payment is made to Plaintiff, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and directing Defendant to turnover such sum to Plaintiff pursuant to sections 548(a)(1)(B) and 550(a) of the Bankruptcy Code;

*[Remainder of Page Intentionally Left Blank]*

    c. On Plaintiff's Third Cause of Action, in favor of Plaintiff and against Defendant in an amount not less than the amount of the Additional Fraudulent Transfers, plus interest from the date of such Additional Fraudulent Transfers until full payment is made to Plaintiff, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and directing Defendant to turnover such sum to Plaintiff pursuant to sections 548(a)(1)(B) and 550(a) of the Bankruptcy Code;

    d. On Plaintiff's Fourth Cause of Action, in favor of Plaintiff and against Defendant disallowing the Claims pursuant to section 502(d) of the Bankruptcy Code unless and until Defendant returns the Transfers to Plaintiff; and

    e. Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
   April 20, 2018

          COLE SCHOTZ P.C.

          /s/ David R. Hurst
          David R. Hurst
          Daniel F.X. Geoghan
          1325 Avenue of the Americas
          19th Floor
          New York, New York 10019
          Telephone: (212) 752-8000
          Facsimile: (212) 752-8393

          *Counsel to the SunEdison Litigation Trust*

| Debtors: | SunEdison, Inc., et al. | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Case No.: | 16-10992 (SMB) | | | | **EXHIBIT A** | | | |
| Bankruptcy Court: | Southern District of New York | | | | | | | |
| Preference Period: | 1/22/16 to 4/20/16 | | | | | | | |

| TRANSFEREE | TRANSFEROR | PAID INVOICE DATE | PAID INVOICE NUMBER | PAID INVOICE AMOUNT | PAYMENT DATE | PAYMENT NUMBER | PAYMENT AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| Dashielle Corporation | SunEdison, Inc. | 12/21/2015 | 12015215 | $ | 1,312,000.00 | 2/3/2016 | 340028861 | $ 1,312,000.00 |
| | SunEdison, Inc. | 12/21/2015 | 12015216 | $ | 566,000.00 | 2/3/2016 | 350024188 | $ 566,000.00 |
| | SunEdison, Inc. | 12/21/2015 | 12015217 | $ | 1,583,000.00 | 2/3/2016 | 350024188 | $ 1,583,000.00 |
| | SunEdison, Inc. | 1/28/2016 | 1016240 | $ | 494,000.00 | 3/4/2016 | 640014218 | $ 494,000.00 |
| | SunEdison, Inc. | 1/28/2016 | 1016241 | $ | 1,242,460.00 | 3/4/2016 | 640014218 | $ 1,242,460.00 |
| | SunEdison, Inc. | 1/28/2016 | 1016239 | $ | 824,200.00 | 3/4/2016 | 640022718 | $ 824,200.00 |
| | SunEdison, Inc. | 3/7/2016 | RAL1785PSTNF | $ | 720,289.58 | 3/7/2016 | RAL1785REVPSTNF | $ 720,289.58 |
| | SunEdison, Inc. | 3/7/2016 | RAL1786PSTNF | $ | 1,043,056.64 | 3/7/2016 | RAL1786REVPSTNF | $ 1,043,056.64 |
| | SunEdison, Inc. | 2/25/2016 | 2016235 | $ | 684,039.00 | 3/31/2016 | 910097433 | $ 684,039.00 |
| | SunEdison, Inc. | 2/25/2016 | 2016237 | $ | 1,272,325.00 | 3/31/2016 | 910031322 | $ 1,272,325.00 |
| | SunEdison, Inc. | 2/25/2016 | 2016236 | $ | 403,315.00 | 3/31/2016 | 910031322 | $ 403,315.00 |
| | | | | | | | | $ 10,144,685.22 |

| Debtors: | SunEdison, Inc., et al. | | | | | | |
|---|---|---|---|---|---|---|---|
| Case No.: | 16-10992 (SMB) | | | | EXHIBIT B | | |
| Bankruptcy Court: | Southern District of New York | | | | | | |

| TRANSFEREE | TRANSFEROR | PAID INVOICE DATE | PAID INVOICE NUMBER | PAID INVOICE AMOUNT | PAYMENT DATE | PAYMENT NUMBER | PAYMENT AMOUNT |
|---|---|---|---|---|---|---|---|
| Dashielle Corporation | SunEdison, Inc. | 7/25/2015 | RAL1574 | $ 103,377.87 | 9/4/2015 | 34235 | $ 103,377.87 |
| | SunEdison, Inc. | 8/31/2015 | 8015281 | $ 868,325.00 | 10/13/2015 | 2860039645 | $ 868,325.00 |
| | SunEdison, Inc. | 8/31/2015 | 8015282 | $ 426,437.00 | 10/13/2015 | 2860232956 | $ 426,437.00 |
| | SunEdison, Inc. | 8/31/2015 | 8015285 | $ 1,323,426.00 | 10/13/2015 | 2860232956 | $ 1,323,426.00 |
| | SunEdison, Inc. | 10/29/2015 | RAL1647 | $ 289,739.36 | 10/29/2015 | RAL1647REV | $ 289,739.36 |
| | SunEdison, Inc. | 9/29/2015 | 9015268 | $ 258,706.00 | 10/30/2015 | 3030037294A | $ 258,706.00 |
| | SunEdison, Inc. | 9/29/2015 | 9015267 | $ 499,974.00 | 10/30/2015 | 3030037294A | $ 499,974.00 |
| | SunEdison, Inc. | 9/30/2015 | 9015269 | $ 304,138.00 | 10/30/2015 | 3030037694A | $ 304,138.00 |
| | SunEdison, Inc. | 11/30/2015 | 11015255 | $ 4,398,090.00 | 11/30/2015 | 11015255REV | $ 4,398,090.00 |
| | SunEdison, Inc. | 10/29/2015 | 10015242 | $ 183,000.00 | 12/1/2015 | 3350214635 | $ 183,000.00 |
| | SunEdison, Inc. | 10/29/2015 | 10015244 | $ 1,092,000.00 | 12/1/2015 | 3350214635 | $ 1,092,000.00 |
| | SunEdison, Inc. | 10/29/2015 | 10015243 | $ 2,043,188.00 | 12/3/2015 | 3370024877 | $ 2,043,188.00 |
| | SunEdison, Inc. | 11/30/2015 | 11015253 | $ 823,851.00 | 1/4/2016 | 40039908 | $ 823,851.00 |
| | SunEdison, Inc. | 11/30/2015 | 11015254 | $ 1,365,654.00 | 1/4/2016 | 40040508 | $ 1,365,654.00 |
| | SunEdison, Inc. | 11/30/2015 | 1101522A | $ 4,393,090.00 | 1/4/2016 | 40040508 | $ 4,393,090.00 |
| | SunEdison, Inc. | 1/14/2016 | RAL1595A | $ 76,203.24 | 1/14/2016 | CMRAL1595 | $ 76,203.24 |
| | SunEdison, Inc. | 1/14/2016 | RAL1594A | $ 292,490.20 | 1/14/2016 | CMRAL1594 | $ 292,490.20 |
| | SunEdison, Inc. | 1/14/2016 | RAL1613A | $ 132,923.36 | 1/14/2016 | CMRAL1613 | $ 132,923.36 |
| | SunEdison, Inc. | 1/14/2016 | RAL1614A | $ 291,930.93 | 1/14/2016 | CMRAL1614 | $ 291,930.93 |
| | SunEdison, Inc. | 1/14/2016 | RAL1647AA | $ 289,739.36 | 1/14/2016 | CMRAL1647 | $ 289,739.36 |
| | SunEdison, Inc. | 1/14/2016 | RAL1648A | $ 40,242.83 | 1/14/2016 | CMRAL1648 | $ 40,242.83 |
| | SunEdison, Inc. | 1/14/2016 | RAL1679A | $ 167,430.25 | 1/14/2016 | CMRAL1679 | $ 167,430.25 |
| | SunEdison Products Singapore SPE Ltd. | 10/26/2015 | RAL1648 | $ 40,242.83 | 1/20/2016 | IF5TF61011227 | $ 40,242.83 |
| | SunEdison Products Singapore SPE Ltd. | 8/25/2015 | RAL1595 | $ 76,203.24 | 1/20/2016 | IF5TF61011227 | $ 76,203.24 |
| | SunEdison Products Singapore SPE Ltd. | 10/29/2015 | RAL1647A | $ 289,739.36 | 1/20/2016 | IF5TF61011227 | $ 289,739.36 |
| | SunEdison Products Singapore SPE Ltd. | 8/24/2015 | RAL1594 | $ 292,490.20 | 1/20/2016 | IF5TF61011227 | $ 292,490.20 |
| | SunEdison Products Singapore SPE Ltd. | 9/25/2015 | RAL1613 | $ 132,923.36 | 1/20/2016 | IF5TF61011227 | $ 132,923.36 |
| | SunEdison Products Singapore SPE Ltd. | 9/25/2015 | RAL1614 | $ 291,930.93 | 1/20/2016 | IF5TF61011227 | $ 291,930.93 |
| | SunEdison Products Singapore SPE Ltd. | 11/25/2015 | RAL1679 | $ 167,430.25 | 1/20/2016 | IF5TF61010062 | $ 167,430.25 |
| | | | | | | | $ 20,954,916.57 |